been in every state for two Wetard weeks    okay. Mhm. Yeah. Mhm. Mhm. May it please the court. My name is Adam Charnas and I represent the taxpayers, the rights in this appeal. This case presents a straightforward question of statutory interpretation. The rights company purchased a long euro put a type of foreign currency option. And the question is whether that option falls within the statutory definition of foreign currency contract in section 12 56 of the Internal Revenue Code. The parties disagree about only one aspect of that relatively complicated definition. And that is whether the option quote requires delivery of a foreign currency unquote or alternatively whether settlement of that option quote depends on the value of a foreign currency. Under the plain language of such as the euro put here satisfies in our view both the settlement prong and the delivery prong of the statutory definition. So the option was a foreign currency contract under section 12 56 because the statutory language is clear. We don't think it is either appropriate. It is necessary or appropriate to consult the legislative history. But reviewing the legislative history wouldn't change the result anyway. And for these reasons we think the tax court's holding should be reversed. Now the statutory language here we submit is not particularly difficult to interpret. If you put policy considerations which we submit are what's driving the summit decision in the tax court and the commissioners brief aside. The language is clear. It says the term foreign currency contract means a contract which requires the delivery of or the settlement of which depends on the value of a foreign currency. And in the middle of that definition is the word or which means that there are two different routes in order to satisfy the definition statutory definition of foreign currency contract. You can either show in order for it to be a foreign currency contract. It's a contract that number one requires the delivery of a foreign currency. Alternatively number two it's also or in addition a foreign currency contract if the settlement of the contract depends on the value of a foreign currency. And we submit that both of those aspects are satisfied here and start with the settlement aspect which I think is clear the clearer of the two. There's no real dispute that the settlement of this is a foreign currency. When settlement occurs it's a cash settlement and it turns on the relative value of the euro compared to what the strike price was in the option and therefore depends on the value of the euro at the time of exercise. And the commissioner in his brief doesn't dispute this. What do you do with the argument that although you could parse the words that way it leads kind of to an absurdity that no one could have intended. Well I think that I could I don't want to call it a Scrivener's error because that's sort of a term of art but it's it's just a sort of a complex syntax that that if you parse it you know like your high school English teacher would parse it it leads to your conclusion. But if you kind of look at it generally to try to see what they're accomplishing it leads to another conclusion. What do you do that you just say we're not allowed to do that. Well if it's truly if it truly leads to an irrational result then the court can can certainly do that. It looks pretty irrational to the result in this case looks pretty irrational. Well I mean you you just do a very complex four-way transaction which you know part of it balances out this way and part of it balances out that way so in the end you don't risk any money and three days later you have a loss of three million dollars. I mean that just seems like can't be what Congress intended to allow that. Well I think there's there's two I understand your point your honor there's just two separate points there. First of all the statutory language is the statutory language. I understand that argument. And we our position is that this was part the materials that are available for us to understand putting aside you know a committee report particularly putting aside a committee report drafted by a staffer in the bowels of Congress that a member of Congress may or may not have seen. I'm not even getting into all that. I'm just saying if you look at this chart on page 12 of their brief I mean it sort of lays it all out you know the long we got the long and the short and the euro and the krona and the put and the call you know that's but yeah I don't know about my colleagues that's tough for me but that when you go through all of that what it what it sort of an instant loss when you didn't lose anything. If that's the case the government can seek to disallow this loss under an entirely different doctrine with a different rationale and that's whether there's economic substance here or not and that issue is open on remand if the court agrees with us and applies what we think is the plain language of the statute. The government however. I understand that. That makes sense to me. I understand that. The government is. I'm struggling here I just trying to understand this stuff. I wondering whether that doesn't in addition suggest that there's some problem with this language. I don't I don't see why your honor. I think you have to if you go back to the early 1980s and look at what Congress did it makes perfect sense. In 1981 Congress for the first time established a mark-to- market system for foreign currency futures. Okay now there are only two other types of investment vehicles in which you can invest on the future value of a foreign currency. There are forwards and there are options. So in 1981 Congress said futures are covered by mark-to-market system. In 1982 Congress amended the statute again to add the definition of foreign currency contract. Now if Congress intended to apply mark-to-market only to forwards it makes more sense to suggest that to think that Congress would have used the word forward as it does many other places in the Internal Revenue Code. But there at least we have the word delivery. The problem is when they add this or the settlement language right? Well that's right. It does add a bigger problem right because you say that's your easier argument which I think is true. Well we would suggest that the delivery language covers it as well. I understand but if you could focus on the settlement argument which is more persuasive to me. Yes and in 1984 Congress made a number of additional changes to the statute including adding listed exchange-traded options, foreign currency options, as well as allowing cash settlement of options. And what what could that have what could they have intended to mean that the language doesn't provide I guess the 84 right? Right? Mm-hmm. Is my question making sense? No. No. That's fair. That's fair. I'm not sure it made sense to me either. If this looks like if you read it if you parse it grammatically which requires delivery of or the settlement of which in the second part of the or the first part just goes away so it just it means a contract the settlement of which depends on the value of a foreign currency and that seems to do away with the requirement of a delivery. I'm asking whether Congress may have wanted to do something that it didn't do and if it did want to do that then we can go to the second question how might it have said that differently and I guess the alternative that they might have been trying to do but did inartfully was to broaden the definition of the what they had already they had already requires delivery of a foreign currency they could have said requires either the delivery of a foreign currency or if settled something that depends on the value of the foreign currency. That kind of looks like what they were kind of trying to do well but they don't they just didn't do very well now is that is I'm asking just so I know what generally is going on here is that a fair view of what's going on here? I think the answer is yes they could have written it a different way to make explicit if that's what they intended. And if they had it would have made a lot more sense what they were doing. Well I disagree with that your honor because I think here again futures were already covered and what they've done then is only covered if you delivered a foreign currency. Right. Now and under this alternative this sort of third alternative I'm hypothesizing it would have expanded it to not requiring delivery of a foreign currency but which requires in the alternative settlement which depends on the value of a foreign currency that would have expanded it but still kept it in in the in the futures concept. If they were trying to do that just a few words have to be changed here. I'm not going to try to redraft it but it would just be a few words. It would be a few words but those are words that Congress didn't write and it's also important to note that Congress also gave the Secretary of Treasury authority to promulgate regulations expressly to narrow the congressional definition if it didn't make sense for a matter of policy. And many commentators and even the IRS itself have read this language as saying it can be read to include foreign currency options and in fact for a period of four or five years that's exactly how the IRS read it and we think that's the more natural reading. If it's truly irrational if it leads to a result that would destroy the statute or the Congress's purposes then yes you can distort and torture the statutory language. We think here at most this leads to a bad policy result from the Commissioner's perspective and that's not enough to we think read the language out of its of its plain meaning. Can I ask one more question which I guess the easy answer you would give is that it's not relevant you just go to the other basis but is this is there a colorable economic basis for doing something like this other than shifting when you recognize a loss? Well the right you wouldn't do that no one would do this because it all comes out even that's the whole goal is that it comes out even no matter what happens right? Well yes but that's that's fairly common investment strategy the rights you know on remand would present as they explain to the IRS and it's as in the record you know this was part of their investment strategy and they will present evidence on remand if given the opportunity that this was part of a rational economic strategy. And it's such a obscure one that you can't just sort of shade it in for us in a sentence or two. Well they have conceivable investment strategy would have something that they totally offsets everything so that you come out even later I mean I don't know well it doesn't totally offset these are these are different currencies that while maybe generally trade together there's no guarantee that they trade together you know the whole basis for the structure is that they will trade together. Well they're not they're not doing it on the basis that they won't trade together they're doing it on the basis that they will trade together. Your honor what they told the IRS was that they were informed by multinational that there was a significant opportunity for profit potential here and that's why they entered into these transactions. And that certainly some way in which they would make a profit I mean they've got it structured so that if they make that profit they automatically lose it in one of these other. Well no that's that's only if the if the two different currencies in fact trade directly in I see. And that's there's no guarantee that will happen and but again. Sure looks from the structure I mean who knows I'm no accountant sure looks from the structure like they're depending on they're being traded equally. But your honor if that's certainly the IRS's position and if that's and if that's right they can make that argument and prove it under the economic substance doctrine and disallow the loss. Well you answered my question thank you counsel. Unless there are other questions. Good morning may it please the court I'm Anthony Sheehan and I represent the Commission of Internal Revenue. We start here as we've been discussing with the language of the statute the we've already discussed the particular phrase a contract which requires delivery over the settlement which depends upon the and you know I think it's we could acknowledge that that was somewhat awkwardly phrased but you don't just interpret a statute by looking at the particular language the tax court called it clear. Wait a minute you don't? I mean the particular. That's what we were supposed to do. I'm sorry your honor you have to read that language in the context of the entire statute. The entire it's still got to make sense though right? Let me ask this differently is it not true that the statute is the exact equivalent of the following the term foreign currency contract means a contract the settlement of which depends on the value of foreign currency which is a currency which positions are also traded. Do you agree that that is in effect a proper reading of this which I omitted any language about delivery there because on one side of the either or doesn't contain it. Is that an improper reading or a proper reading? Could you repeat that again your honor? I'm sorry if I didn't get it right. The term foreign currency contract means a contract means a contract the settlement of which depends on the value of a foreign currency which is a currency in which positions are also traded through regulated futures contracts. Because there's an or. The or is one is which requires delivery of and the other is the settlement of which depends upon. So you ought by formal propositional logic to leave out one of the or's and still say a truth. A or B is true that means A is true right? I mean you can't say A or B is true but only if you have both A and B. I mean it doesn't. Is that right or wrong? Maybe under if you focused laser-like on this one clause in the statute. I don't think it's laser-like it's just using eyeballs. And but that would also create an anomaly looking at the statute as a whole. The problem is that. Alright so you say that's the language we're faced with it creates an anomaly but it's hard for you to say that's not the language we're looking at is it? That is that is the includes a contract the settlement of which depends on value doesn't say there has to be a settlement or a delivery just says if there's a settlement it depends on the value. Under that reading however your honor I mean that is one way to read it yes your honor. Is there another way to read it? The problem is that that reading creates an anomaly. That's an interim question I'm asking is there's no other way to read it is there? You could also say that the phrasing that Congress is very awkward in its phrasing and that the requirement portion of it applies to both delivery or settlement. I don't see how you can do that. I don't see how you can do that with a straight face and a grammar teacher looking on. I just don't see how you can do it because it just doesn't read like that. You can't say which requires delivery of the settlement of which depends on. That isn't the way English is structured. The Supreme Court in the Lamey case which taxpayers cited in the reply brief did say that a statute could be ungrammatical or awkward and still be clear for the proposition it was trying to establish. That's the opposite of what I'm asking this is not ungrammatical at all it's perfectly grammatical. It just read grammatically leads to the conclusion you say is terrible which looks like a pretty terrible conclusion to me. I agree with that but but what do I know I just got to go with what the statute says right? You start with you start with that phrase but then you look a little bit more broadly at the context you see that everywhere else in 1256 where Congress wanted to subject an option to mark to market accounting it named that option specifically it defined that option and it also required that the option be traded on or subject to the rules of a would be put in there would be snuck in there indirectly and not be subject to those same rules. I guess my question is what if it was? What do we do then? If the court if it reads that way I don't know how you can get around this reading. I wish you know candidly I wish there was a way to get around I don't see what the way around it is. It is also interesting that Congress knowing that it's writing very complex language gives you a way around it by letting you fix it by regulation is that true? I think what was going on at the time is that if you look at the history you've got three amendments to the statute over the course of three years. The financial landscape was changing very rapidly and Congress was playing catch-up. We started off with regulated futures contracts regulated futures contracts requiring delivery then they allowed cash settlement then they put in foreign currency contracts they're playing catch-up and then in 84 they said well okay you can take these foreign currency contracts you can cash settle those too and in playing catch-up with the financial industry they maybe got ahead of themselves and they didn't draft the statute as clearly as all of us would have hoped. I think part of the... I'm with you on all of that. I just want to know what the position of the IRS is if we read this to say what it appears to say and what the other side says it says and and in a way that is not unclear. If we read it to say that by its words then what's your position? You lose or is there some other way that you can argue that we exalt legislative history over the language of the statute? We're not I'm not going to get my colleagues to say that. We're not... what we're saying is that looking at the statute as a whole but you know our point on that already I mean if the court were to read the statute specifically that way that there's a that the settlement depending upon the value of then it would have to go back would have to be a remand for to consider the commissioners other theories and the commission would probably have to promulgate a regulation which it has the authority to do. But we're also saying that you can the court does not there is a legitimate way to say that this is awkward it creates an anomaly this allows us to look at the history of the statute and look at the drafting and look at the committee reports. What if we don't say it's awkward but we do say it creates an anomaly? That's not enough for us to change it is it or is it? Again if it creates the... I'm asking you hypothetically you don't have to agree with the premise. Okay. If you read this and say this is what it says okay but it anomaly it allows people to do things that no tax policy could support assuming that we in our ignorance could come up with that conclusion. If it's if you can show it's demonstrably at odds with the intent of the drafters then you probably could yes go for the legislative history but it also creates an anomaly within the structure of the statute and the language of the statute itself. In that should the fact that Congress has built in a an escape hatch for anomalies make us less inclined to fix an anomaly when the language is clear? We should try to get at and affect the intent of the drafters. Again we acknowledge primarily is reflected in the language of the statute language of the statute as a whole but the escape hatch is still there and indeed one reason why the IRS probably has not promulgated a regulation did not promulgate one at the time was that if you look at the notice 2003-81 where there was an unfortunate statement in the in the facts that notice was severely criticized. You look at the keys treatise which we cite and taxpayers do and the Lamy... there's also an article they cite in their reply brief. When that came out it was severely criticized by the tax community which had been following the development of this over time and by corporate tax departments which had always been treating their major over-the-counter options as not being mark-to-market because you know these are companies that are engaging in currency hedging for business purposes not to create multi-leg tax shelters so because up to that point up until the IRS had that unfortunately worded notice everybody was treating it the way we're advocating. So... Unfortunately what was that last statement about? Up until 2003 with the unfortunately worded facts in notice 2003-81 the tax community and corporate tax departments according to the treatise and the article cited in our brief and the reply brief were saying well our major currency options do not have to be marked-to-market. Can you tell us what the 2003 notice was? The 2003 notice was put out to declare the major-minor tax shelter which we're dealing with to declare it an abusive tax shelter in part because oftentimes taxpayers were not recognizing the gain leg of it. So the whole purpose of that was to say this is an abusive tax shelter we're going to crack down on it. Unfortunately in the factual statement instead of saying the taxpayer claims that the major currency option must be marked-to-market it simply said the major currency options marked-to-market. That was corrected four years later in 2007. That statement which is consistent with the appellant's position at least was out there as the statement of the IRS for four years? Yes your honor. Okay how can their position be in bad faith? How can how can they be subject to a penalty if that's that's what the IRS's position was? They're subject to the penalty because their position is still contrary to what we'd say is the statute to the legislative history to prior interpretations also. Even if that's the statement of the IRS for four years? We in the facts which we corrected. They put it out I mean it says what it says. They don't have a right to rely on it? Another point your honor is that another reason they don't cannot rely on it is that we're not just here about 1256 they in order to escape the penalty they have to show substantial authority or reasonable cause in good faith for the transaction as a whole. And the whole point of the notice was that this is an abusive shelter. So if it goes back on the statute it also has to go back on the penalty because they would have to show not only that on the merits that this transaction economic substance but if we could show the tax court holds no there's no economic economic substance here they would then have to overcome the penalty on the reasons for the disallowance which would be that this is an abusive shelter. I think that answers the question I wanted to ask but let me make sure. If we were to rule against you on the strict reading of this statute but to say that the other ways in which the IRS could claim that this was invalid are still on the table what would be the proper ruling according to your client on the penalty issues? Those we should just remand as well? Everything should go back. And no need for us to rule on those issues because they're tied to the argument that's being rejected. It would have to go back. Thank you. If there are no further questions, rest on the brink. Thank you counsel. Thank you. Your Honor, with respect to the rationale for the investment I'll just refer the court to pages 231 to 234 of the supplemental appendix which is submission by the rights to or by cyber advice to the IRS explaining the basis for the investment including the fact that they were their understanding from multinational was that there was a almost 25% statistical possibility of realizing a 60% return on its investment. Obviously in future proceedings the IRS can challenge the veracity correctness of that. But could I ask a technical question and I probably won't even be able to understand the answer but that 33 million was donated to or something worth 33 million dollars was given to a charity? Yes. Right? Correct. But the tax benefit of this is in the on the order of two or three million dollar loss right? So is there some way in which that assignment was offset by some is a charity really getting 33 million dollars worth of something or not? I hate to refer to the other side's brief but if you if you look at the chart on page 12 of the government. I'm there. So this the long euro put which is the second column is what was donated to the charity with as indicated a value of 33 million. The short put on the last column was was also donated and that had and that had a gain of approximately a 33 million. So this but if you look at that it looks like their FEA is getting it's getting something that both when it's getting something that went down in value and something that 100. Apart from the jargon but I think what is that is that a real charity? Yes. And are they actually getting something on the order of 30 million dollars or are they getting something less? My understanding. They go whoopee we like these people to shelter their taxes because we can go build a new hospital or. My understanding and I could be wrong about this too is they're getting something worth 33 million dollars and they're getting an obligation. At the same time. At the same time that obligates them to. Maybe a little bit more or less but they're not getting something that's they get they they agree to an obligation which is roughly at least roughly offset by the thing that they gain is that right? That's right. Now I think it's important. Might be agreeable to that you know just for goodwill or because they might get a little bit of difference. Right. Okay thank you. I think the record is silent on that. With respect to the 2000. I was having trouble with that. With respect to the 2003 notice the IRS accused us in in their brief or its brief. Commissioner accused us of grossly misrepresenting that notice and I would just respectfully urge the court to read it because the the commissioners reading of that is is simply incorrect. This is not a situation in which the Commissioner which the notice had one misstatement in which they failed to say the taxpayer claims or the taxpayer alleges. There were no fewer than eight separate references in that notice to the fact that the option was a 1256 contract. And those references are in the introduction in the notice, in the fact section of the notice, and in the analysis of the notice. And that's how everybody else read the notice also. No one else read the notice as being a sort of a typographical error or a mistake. You agree we don't need to get to that if we agree with your primary argument? I do agree with that yes your honor. And finally we don't think there's any deals with with foreign currency options which are not traded on an exchange. Other provisions deal with exchange-traded investments including other options and we think it makes perfect sense how Congress structured the statute. Thank you. We'll do our best. Case will be submitted.